IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Curtis Curtis,<br><br>         Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>         Defendant. | No. CV 12-00396-TUC-JGZ (DTF)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Curtis Curtis brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1, Compl.) Before the Court are Plaintiff's Opening Brief ("Pl.'s Br.") and Defendant's Opposition to Plaintiff's Opening Brief ("Def.'s Br."). (Doc. 29, 36). Plaintiff has not filed a reply. This matter has been referred to the Magistrate Judge for a Report and Recommendation. (Doc. 8, 38.) Based on the pleadings and the administrative record submitted to the Court, the Magistrate Judge recommends that the District Court, after its independent review, affirm the Commissioner's decision denying benefits.

**PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act on February 12, 2007. (Administrative Record (AR) 109-11.) Plaintiff alleged disability since December 1, 2000.

(AR 109.)[1]  Plaintiff's application was denied initially and on reconsideration. (AR 68-75.) Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR 65.) A hearing was held on January 20, 2010 at which Plaintiff appeared by telephone and testified. (AR 410-24.) On February 3, 2010, the ALJ issued an unfavorable decision. (AR 48-61.)

Plaintiff requested review which the Appeals Council granted on July 16, 2010. (AR 90, 92.) The Appeals Council remanded the matter to the ALJ with instructions regarding issues to be given further consideration. (AR 92-96.) The ALJ held another hearing on November 6, 2010 at which Plaintiff, represented by counsel, appeared by telephone due to his imprisonment. (AR 425-45.) The ALJ issued an unfavorable decision on December 15, 2010. (AR 9-23.) Plaintiff requested review of the ALJ's decision. (AR 407-09.) The Appeals Council denied Plaintiff's request for review, making the Commissioner's decision final for purposes of judicial review. (AR 5-8.)

## FACTUAL HISTORY

Plaintiff was 28 years of age at the time of his alleged onset date and 38 years of age as of the date of the ALJ's December 15, 2010 decision. (AR 109, 428.) Plaintiff has a high school education and no past relevant work experience. (AR 21, 104-08, 112-15, 127-34.)

In 2001, Plaintiff was treated by Hermes Gerundo, M.D., of ValueOptions, Inc., (ValueOptions) for depressed mood and bipolar disorder and was prescribed medication. Plaintiff was noted as "clinically stable." (AR 301-17.) Plaintiff has a history of substance abuse. (AR 301.) A February 2001 record noted that Plaintiff was jailed for 180 days for assault and was placed on three years of probation. (AR 301-02.)

---

[1] Plaintiff was incarcerated prior to January 2007 and after April 2009 and therefore not eligible to receive disability insurance benefits for those periods. (AR 19.) *See Hernandez v. Colvin*, No. CV-13-00549-PHX-NVW, 2013 WL 5806475, at *1 (D. Ariz. Oct. 29, 2013) (noting that prisoners may not collect disability insurance benefits).

Plaintiff was incarcerated at the Arizona Department of Corrections (ADC) from September 2005 through January 2007. (AR 241-52, 263-84, 326, 416, 437.) X-rays on December 7, 2007 were normal regarding Plaintiff's lumbosacral spine but showed minor degenerative changes to his right knee. (AR 207.)

Between March 2007 and April 2009, Plaintiff was treated at ValueOptions and Magellan Health Services (Magellan) by providers that included Psychiatric Nurse Practitioner (NP) Brandy MacLaughlin. Plaintiff's diagnosis of bipolar disorder and polysubstance abuse was noted and he was prescribed medication. (AR 326-32, 214-39, 364-405.) In September 2007, Plaintiff reported serving ten days in jail for domestic violence and criminal damage. (AR 218-19.) Plaintiff was placed on a Behavioral Health Plan by his Magellan health care providers in November 2007. (AR 230-39, 374-405.) On October 13, 2008, Plaintiff reported that he had been charged with criminal violations and had been released from jail on September 20, 2008. (AR 366-67.) Plaintiff was incarcerated at ADC beginning in April 2009 and at the time of the November 2010 hearing. (AR 334-49, 351-62, 427.)

Plaintiff testified at the second hearing that he was unable to work because of his behavior, stating that he has a tendency to be violent to others for no reason. (AR 430-32.) Plaintiff said that he is depressed "all the time" and that he takes medication for his psychosis. (AR 431.) Plaintiff stated that he cannot stand or walk for long periods due to his knee impairment and that he has overall body pain. (AR 431.) Plaintiff testified that he hears voices but that when he takes his medication he can think about what he should do and without his medication he reacts "because [his] head is always racing." (AR 433-34.)

In the second relevant decision, the ALJ found that Plaintiff has the severe impairments of obesity, arthritis in the right knee, and affective disorder (bipolar) but that these impairments did not meet or medically equal the listings. (AR 15.) The ALJ found that the medical evidence did not support a finding of disability prior to Plaintiff's date last insured of December 31, 2003 and accordingly, Plaintiff was not eligible for Title II benefits. (AR

14, 18-19.)  The ALJ considered Plaintiff's eligibility for Title XVI benefits as of January 2007. (AR 19.) The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work except that Plaintiff could understand, remember and carry out simple instructions without significant limitations and could understand and remember detailed instructions but Plaintiff might be moderately limited by impulsivity in carrying them out. (AR 17-18.) Plaintiff was moderately limited in working with others without being distracted by them; moderately limited in completing a workday and workweek without interruptions by psychologically based symptoms; and moderately limited in interacting with the general public. (AR 18.) Plaintiff had no significant limitations in the "adaptation realm." (AR 18.) The ALJ found that jobs in the national and Arizona economies that Plaintiff could perform, based on the testimony of the Vocational Expert (VE), included janitor/cleaner, car vehicle washer, and assembler performed at the sedentary level. (AR 22.) The ALJ concluded that Plaintiff was not under a disability from December 1, 2000 through the date of decision. (AR 22,)

**STANDARD OF REVIEW**

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.920, 416.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-62, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).  To establish disability the claimant bears the burden of showing  (1) that he is not working; (2) that he has a severe physical or mental impairment; (3) that the impairment meets or equals the requirements of a listed impairment; and (4) that his RFC precludes him from his past relevant work. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4).  The Step Five determination is made on the basis of four factors: the claimant's RFC, age, education and

1 work experience. *Hoopai*, 499 F.3d at 1074. "The Commissioner can meet this burden
2 through the testimony of a vocational expert or by reference to the Medical Vocational
3 Guidelines." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

4     "The ALJ is responsible for determining credibility, resolving conflicts in medical
5 testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
6 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the
7 Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. §
8 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance."
9 *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d
10 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when
11 the ALJ's findings are based on legal error or are not supported by substantial evidence in the
12 record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so
13 because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if
14 the evidence can support either outcome, the court may not substitute its judgment for that of
15 the ALJ." *Matney*, 981 F.2d at 1019 (citing *Richardson v. Perales,* 402 U.S. 389, 400, 91
16 S.Ct. 1420, 28 L.Ed.2d 842 (1971)); *Batson v. Comm'r of Soc. Sec*., 359 F.3d 1190, 1198 (9th
17 Cir. 2004).

## DISCUSSION

19     This case presents three issues on appeal. Plaintiff contends that the ALJ misinterpreted
20 the medical evidence, that the ALJ implicitly and erroneously rejected the opinion of a
21 treating source, and that the ALJ failed to comply with the remand instructions of the Appeals
22 Council. Defendant contends that substantial evidence supports the ALJ's decision that
23 Plaintiff is not disabled.

**The ALJ's Interpretation of "Moderately Limited"**

25     Plaintiff contends that the ALJ misinterpreted the meaning of "moderately limited" in
26 assessing Plaintiff's RFC. (Pl.'s Br. at 4-5.) Here, the ALJ gave great weight to the
27 assessments of the state agency physicians who evaluated Plaintiff's medical records and

opined that Plaintiff's impairments did not preclude the performance of work-related activities. (AR. 21.)  With respect to this finding, psychologist David Yandell, Ph.D., provided a "Mental Residual Functional Capacity Assessment"(Form SSA-4734-F4-SUP) dated January 8, 2008 indicating in Section I of the form that Plaintiff was moderately limited in certain areas:  the ability to carry out detailed instructions; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and work week without interruptions from psychologically based symptoms; and the ability to interact appropriately with the general public. (AR. 189-90.) In Section III of the form, Dr. Yandell included a written summary regarding Plaintiff's functional capacity assessment as follows:

> Able to understand, remember, and carry out simple instructions with out significant limitations. Able to understand and remember detailed instructions but impulsivity may render carrying them out with moderate limitations. Has moderate limitations in working with other[s] without being distracted by them. Has moderate limitations in completing a normal work day and work week without interruptions by psychologically based sxs [symptoms].
>
> Social interaction: moderately limited in interacting with the general public.

(AR 191.)

During the hearing, the ALJ posed a hypothetical question to the VE that described a person of Plaintiff's age and education who was limited to light work and that included the limitations Dr. Yandell outlined in Section III of the form.  (AR 438-39.)  When the VE asked for clarification of "the definition of moderate," the ALJ responded "[n]ot precluded, but there are limitations." (AR 439.)  After the ALJ agreed that the VE could assume that "they could function on a satisfactory basis," the VE testified that there were jobs that Plaintiff could perform. (AR 439-40.)  In the ensuing discussion between the ALJ and Plaintiff's counsel, the ALJ commented that the referenced form was prepared by the Disability Determination Service and that the definitions given to the VE are the "definitions that they generally have on their other forms" but it was not "on this specific form." (AR 441.)  Plaintiff's counsel then questioned the VE as follows:

- 6 -

| | | |
|---|---|---|
| Q. | | I guess what I hear you saying is that without a definition, you really can't - - |
| A. | | I have to get clarification on what your definition of moderate is. |
| Q. | | I'm assuming markedly limited would be not available. I have no definition unfortunately. |
| A. | | Okay. |

(AR 441-42.)

Plaintiff argues that Dr. Yandell's form offered three categories of limitations, that is, not significantly limited, moderately limited, and markedly limited, and that "not significantly limited would most likely correlate to functioning on a satisfactory basis." (Pl.'s Br. at 4.) Plaintiff contends that the VE could not provide an opinion without a definition of "moderate" offered by Dr. Yandell. (*Id*. at 4-5.)

The ALJ did not improperly construe the meaning of the term "moderately limited." As discussed in *Whitt v. Colvin*, No. 3:12-CV-01262 RE, 2013 WL 5719237, at *3-4 (D. Or. Oct. 18, 2013), the Social Security Program Operations Manual System ("POMS") denotes Section I of the Mental Residual Functional Capacity Assessment (MRFCA) as a worksheet while Section III contains the actual mental residual functional capacity assessment. "'Moderately limited' as used in the MRFCA form means that an individual's capacity to perform the activity is impaired, but, according to the POMS, it does not mean that an individual is precluded from performing that activity." *Id*. (citing POMS DI 24510.063).[2] *See also Coleman v. Astrue*, No. 3:11-cv-01112 RE, 2013 WL 550536, at *7 (D. Or. Feb. 11, 2013) (discussing this same meaning of "moderately limited" regarding the MRFCA form completed by a state agency psychologist in April 2008); *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010) (noting that POMS DI 24510.063 indicates that "moderately limited" should be selected when "'the individual's capacity to perform an activity is

---

[2] The Social Security Rules and Program Operations Manual System (POMS) can be found on the internet at http://policy.ssa.gov/poms.nsf. Although the POMS "does not have the force of law," it "is persuasive authority." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

- 7 -

impaired'" but "[t]he definition does not require that the individual's capacity be at a level that is unacceptable in a national workforce").

After describing Plaintiff's mental functional capacity assessment in Section III of the form, Dr. Yandell further opined in Section III that Plaintiff "remains capable of performing simple and some detailed job tasks on a sustained basis." (AR 191.) The hypothetical question posed by the ALJ to the VE was based on the mental residual functional capacity assessment found by Dr. Yandell in Section III of the form and subsequently accepted by the ALJ in his RFC assessment. (AR 17-18.) The ALJ did not err by misinterpreting the medical evidence.

**The ALJ's Consideration of the Nurse Practitioner's Treatment Records**

Plaintiff contends that the ALJ erred by not considering the opinion of a "treating source," referring to a record completed by NP MacLaughlin. (Pl.'s Br. at 5.) Plaintiff refers to counsel's question to the VE based on NP MacLaughlin's June 6, 2007 treatment record indicating that Plaintiff had fair concentration, fair insight, and poor judgment; and the VE's response that sustaining work would be difficult under such circumstances. (*Id*., referring to AR 227-28, 442.) Plaintiff argues that NP Maclaughlin's opinion should be afforded the same weight as that of "an acceptable medical source as a member of the 'interdisciplinary team' treating the claimant." (Pl.'s Br. at 5 & n. 2.) Plaintiff also refers to a February 2007 SMI ("seriously mentally ill") determination as showing that the record was reviewed by a psychiatrist or psychologist. Plaintiff then notes that this determination is not part of the record but "is attached accordingly." (Pl.'s Br. at 5.)

Generally, a treating physician's opinion is afforded more weight than the opinion of an examining physician, and an examining physician's opinion is afforded more weight than a non-examining or reviewing physician's opinion. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The social security regulations define a "treating source" as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing relationship with [the claimant]." 20 C.F.R. § 404.1502. An "acceptable medical source"

includes licensed physicians, licensed or certified psychologists, licensed optometrists, and licensed podiatrists. See 20 C.F.R. §§ 404.1502, 404.1513(a). An "acceptable medical source" may express "medical opinions." 20 C.F.R. § 404.1527(a)(2). A nurse practitioner is included as an "other source," not as an "acceptable medical source." 20 C.F.R. § 404.1513(d)(1). Only an "acceptable medical source" can be considered as a "treating source." SSR 06-03p, 2006 WL 2329939, at *2. "Other sources" such as a nurse practitioner "are not entitled to the same deference" as acceptable medical sources. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Although Plaintiff argues that NP MacLaughlin should be considered a treating source, Plaintiff has not referred to any record that shows that she worked under the close supervision of a physician, psychiatrist or psychologist.[3] NP MacLaughlin's June 6, 2007 treatment record contains the notation "followed by Dr. Buchanan, no phone number available," but this record is signed by NP MacLaughlin as the "prescribing clinician." (AR 225, 229.)

Possibly with respect to the alleged February 2007 SMI determination, Plaintiff's counsel told the ALJ during the hearing that he had seen information that Magellan had deemed Plaintiff SMI but that counsel had not received this form with the Magellan records. (AR 443.) The ALJ held the record open for thirty days for submission of additional medical evidence. (AR 443-44.) Plaintiff has not referred to this February 2007 form as included in the administrative record.[4] Plaintiff has not submitted this form with his briefing. The ALJ

---

[3] Plaintiff relies on *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996), in support of his argument that NP MacLaughlin's opinion should be afforded the same weight as that of an acceptable medical source because she was a member Plaintiff's interdisciplinary treatment team. Defendant points out that the *Gomez* rationale was based on a regulatory provision that was repealed in 2000. (Def.'s Br. at 17-18.) *See Molina*, 674 F.3d at 1111, n. 3. The Ninth Circuit in *Molina* did not address "*Gomez's* continued vitality." *Id.*

[4] Plaintiff does refer to a November 2006 ADC medical record that contains the notation "SMI." (Pl.'s Br. at 3; AR 267.) The record also contains a notation in a Magellan progress note referring to "Dr. Singh." (AR 220.)

- 9 -

in his decision commented that, "[a]lthough apparently qualifying for a Seriously Mentally Ill determination and program, the treatment notes continue to reflect that the claimant was stable on his medications and had no mood swings or racing thoughts." (AR 19.) The ALJ referred to Plaintiff's June 6, 2007 ValueOptions record that denotes "SMI." (AR 19, 224-29.) This appears to be the same record about which Plaintiff's counsel questioned the VE who responded that sustaining work would be difficult. (AR 442.) This record is signed by NP MacLaughlin.

An ALJ may discount evidence from "other sources" if the ALJ "gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111. Here, in contrast, the ALJ discussed certain of Plaintiff's treatment records from ValueOptions and Magellan dated March 2007 through February 2009 as indicating that Plaintiff suffered from bipolar disorder but that his condition stabilized when he took his medication and he was able to maintain relationships with his girlfriend and children and attend to his overall daily needs. (AR 19-21, referring to Ex. 1F & 3F [see AR 327, 214-15, 222-29, 218-19, 238-39, 220-21, 230, 396, 397, 402-03, 383, 379-82, 405, 391-93, 377-78].) Certain of these records were signed by NP MacLaughlin. (AR 224-29, 396, 377-78 [*see* AR 327, 214-15, 222-23, 218-19, 220-21, 397-401, 383-84 which also appear to contain NP MacLaughlin's signature].) The ALJ's review and discussion of these records indicate that he found no functional limitations that would preclude work. The ALJ did not erroneously reject the opinion of a "treating source."

**The ALJ's Compliance with the Appeals Council's Remand Directions**

Plaintiff contends that the ALJ's failure to consider the SMI assessment and the limitations noted by the treating source shows that the ALJ failed to follow the Appeals Council's remand instructions. (Pl.'s Br. at 6.) Plaintiff refers to the Appeals Council's directions to give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to record evidence; and to obtain evidence from a VE and pose hypothetical questions that reflected the specific capacity/limitations established by the record as a whole. (*Id*.; AR 95-96.) Plaintiff has not

demonstrated error with respect to the ALJ's assessment of Plaintiff's RFC or regarding the ALJ's evaluation of the record medical evidence. Plaintiff's claim that the ALJ failed to follow the Appeals Council's remand directions should be rejected.

## RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an order affirming the Commissioner's decision denying Plaintiff's claim for benefits.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. Any objections filed should be captioned with the following case number: CV-12-0396-TUC-JGZ.

DATED this 24th day of January, 2014.

.

D. Thomas Ferraro
United States Magistrate Judge

- 11 -